**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

Plaintiff,

vs. No. CIV-06-0253 JB/LAM

ROSWELL RADIO, INC.,

Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Defendant's Motion to Strike Counsel for Defendant as a Witness and Motion for Protective Order, filed November 13, 2006 (Doc. 22). The primary issue is whether the Court should preclude Plaintiff Equal Employment Opportunity Commission ("EEOC") from calling Sheryl Saavedra, the now former attorney of record for Defendant Roswell Radio, Inc. ("RRI"), as a witness and from deposing her before trial. Because the EEOC has not filed a written response to the motion, and because the relevance of Ms. Saavedra's testimony is not apparent, the Court will grant the motion in part and deny it in part. The Court will issue the protective order for the deposition, but will not strike Ms. Saavedra as a witness or grant RRI any fees and costs incurred in preparing and filing this motion.

**FACTUAL BACKGROUND**

RRI employed Claimant Helen Bertrand as a radio personality and disc jockey from July 22, 2002 through May 19, 2005. See Memorandum of Law in Support of Defendant's Motion to Strike Counsel for Defendant as a Witness and Motion for Protective Order ¶ 1, at 1, filed November 13, 2006 (Doc. 23)("RRI's Memorandum"). On June 5, 2005, Bertrand filed a Charge of Discrimination

with the EEOC alleging discrimination on the basis of gender and retaliatory discharge in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17. See RRI's Memorandum ¶ 2, at 1. In her Charge of Discrimination, Bertrand alleged that RRI terminated her in retaliation for her deposition testimony in a separate EEOC matter initiated in July 2004 involving three former female employees of RRI and that she was discriminated against on the basis of gender when a male applicant received her position. See id. ¶ 3, at 2; id. at 5.

On July 27, 2004, Ms. Saavedra sent an e-mail to John Dunn, RRI's owner, regarding on-air statements Bertrand made on or about that day. See id. ¶ 5, at 2. The communication consists of a two-line statement directing RRI to discipline Bertrand because of her statements. See id. at 2-3.

The law firm of Hennighausen & Olsen served as RRI's general counsel for a significant number of years before the initiation of either the July 2004 EEOC proceeding or this matter. See id. at 5. In the Initial Pretrial Report ("IPR") filed in this case, Ms. Saavedra is listed as RRI's attorney through her affiliation with Hennighausen & Olsen. See Initial Pretrial Report at 1, filed July 24, 2006 (Doc. 12). In the IPR, the EEOC lists Ms. Saavedra as a potential witness in this case, and explains that "Ms. Saavedra may be called . . . to testify regarding [Bertrand's] claim, including testimony regarding an e-mail purportedly written by Ms. Saavedra to John Dunn on July 27, 2004 about Helen Bertrand." Id. at 8.

**PROCEDURAL BACKGROUND**

On March 30, 2006, after investigating Bertrand's Charge of Discrimination, the EEOC brought this action on Bertrand's behalf under Title VII and Title I of the Civil Rights Act of 1991, 42 U.S.C. §§ 1981-1996b, to correct alleged unlawful employment practices on the basis of retaliation. See Complaint at 1, filed March 30, 2006 (Doc. 1)("Complaint"). Ms. Saavedra filed an

entry of appearance on RRI's behalf on May 17, 2006. See Acknowledgment, Acceptance of Service and Entry of Appearance, filed May 17, 2006 (Doc. 4).

The EEOC noticed Ms. Saavedra for her deposition, which was scheduled for December 5, 2006, at 9:00 a.m. See RRI's Memorandum ¶ 6, at 2. On November 13, 2006, RRI filed this motion, requesting the Court strike Ms. Saavedra as a witness for the EEOC and issue a protective order restricting the EEOC from taking Ms. Saavedra's deposition. On November 21, 2006, RRI filed a Notice of Non-Appearance, indicating that Ms. Saavedra would not appear at the scheduled deposition on December 5, 2006. See Notice of Non-Appearance, filed November 21, 2006 (Doc. 24).

RRI has, in good faith, conferred with opposing counsel in an attempt to resolve the dispute without court action. See RRI's Memorandum at 4. In addition to the substantive relief RRI requests, RRI also asks the Court to award it attorneys' fees and costs associated with bringing this motion. See id. at 7. The EEOC has not responded to this motion. The EEOC has, however, filed its own motion in limine to preclude RRI from introducing evidence regarding the e-mail Ms. Saavedra sent to Dunn. See Plaintiff's Motion in Limine to Exclude All Evidence Concerning Sheryl Saavedra's E-Mail, filed February 12, 2007 (Doc. 38). The EEOC attached to its motion the affidavit of Veronica A. Molina, counsel for the EEOC, in which she states that the EEOC has agreed to withdraw Ms. Saavedra as a witness. See id., Exhibit A, Affidavit of Veronica A. Molina ¶ 3, at 1 (executed February 12, 2007).

On March 22, 2007, the law firm of Hennighausen & Olsen filed its second amended motion to withdraw as counsel for RRI. See Second Amended Motion to Withdraw, filed March 22, 2007 (Doc. 43). The Court granted the motion to withdraw on March 30, 2007. See Order Allowing

Withdrawal of Counsel, filed March 30, 2007 (Doc. 44). No other counsel has entered an appearance for RRI.

**RULE 26 AND DEPOSITIONS OF COUNSEL**

Discovery under rule 26 of the Federal Rules of Civil Procedure is liberal, allowing parties the right to "obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). This principle of broad discovery is intended to allow the parties to learn as much as they can about each other's claims and defenses before trial. See Herbert v. Lando, 441 U.S. 153, 177 (1979)("The Court has more than once declared that the deposition-discovery rules are to be accorded a broad and liberal treatment to effect their purpose of adequately informing the litigants in civil trials."). The federal discovery rules are a reflection of the courts' and Congress' recognition that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." Hickman v. Taylor, 329 U.S. 495, 507 (1947).

In managing discovery, however, Rule 26(c) provides that the court, upon a showing of good cause, "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). The United States Court of Appeals for the Tenth Circuit has explained that "[r]ule 26(c) is broader in scope than the attorney work product rule, attorney-client privilege and other evidentiary privileges because it is designed to prevent discovery from causing annoyance, embarrassment, oppression, undue burden or expense not just to protect confidential communications." Boughton v. Cotter Corp., 65 F.3d 823, 829-30 (10th Cir. 1995). Moreover, the Tenth Circuit has acknowledged special problems that arise when a party attempts to depose the opposing party's attorney.

Taking the deposition of opposing counsel not only disrupts the adversarial system

> and lowers the standards of the profession, but it also adds to the already burdensome time and costs of litigation. It is not hard to imagine additional pretrial delays to resolve work-product and attorney-client objections, as well as delays to resolve collateral issues raised by the attorney's testimony. Finally, the practice of deposing counsel detracts from the quality of client representation. Counsel should be free to devote his or her time and efforts to preparing the client's case without fear of being interrogated by his or her opponent.

Id. at 829 (quoting Shelton v. Am. Motors Corp., 805 F.2d 1323, 1327 (8th Cir. 1986)). To address these concerns, the Tenth Circuit applies a three-part test to determine whether a party may take an opposing counsel's deposition; under the test, the deposition of opposing counsel is limited to circumstances where: (i) no alternative means exist to obtain the information sought; (ii) the information sought is relevant and not privileged; and (iii) the information sought is crucial to the preparation of the case. See Thiessen v. Gen. Elec. Capital Corp., 267 F.3d 1095, 1112 (10th Cir. 2001)(citing Shelton v. Am. Motors Corp., 805 F.2d at 1327).

**ATTORNEY-CLIENT PRIVILEGE AND ATTORNEY WORK-PRODUCT DOCTRINE**

The attorney-client privilege "protects confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his or her capacity as a legal advisor." United States v. Phelan, 3 Fed. Appx. 716, 718 (10th Cir. 2001)(quoting In re Grand Jury Subpoena Duces Tecum, 697 F.2d 277, 278 (10th Cir.1983))(internal quotation omitted). The privilege is designed to promote "full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice." Swidler & Berlin v. United States, 524 U.S. 399, 403 (1998)(quoting Upjohn Co. v. United States, 449 U.S. 383, 389 (1981)). To be protected by the privilege, "a communication between a lawyer and client must relate to legal advice or strategy sought by the client." United States v. Johnston, 146 F.3d 785, 794 (10th Cir. 1998). "A party claiming the attorney-client privilege must prove its applicability,

which is narrowly construed." Foster v. Hill (In re Foster), 188 F.3d 1259, 1264 (10th Cir. 1999).

The attorney work-product doctrine "shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." In re Qwest Commc'ns Int'l Inc., 450 F.3d 1179, 1186 (10th Cir. 2006)(quoting United States v. Nobles, 422 U.S. 225, 238 (1975)). The protection applies to "attorneys' or legal representatives' mental impressions, conclusions, opinions, or legal theories authored in anticipation of litigation." Grace United Methodist Church v. City of Cheyenne, 451 F.3d 643, 668 (10th Cir. 2006)(citing Fed. R. Civ. P. 26(b)(3)). See Hickman v. Taylor, 329 U.S. at 510 ("[A]n attempt, without purported necessity or justification, to secure written statements, private memoranda and personal recollections prepared or formed by an adverse party's counsel in the course of his legal duties . . . falls outside the arena of discovery."). "Work product can be opinion work product, which some courts have held to be absolutely privileged, or non-opinion work product, i.e., fact work product, which may be discoverable under appropriate circumstances." In re Qwest Commc'ns Int'l Inc., 450 F.3d at 1186. Similar to the attorney-client privilege, "[t]he party asserting a work product privilege as a bar to discovery must prove the doctrine is applicable." Resolution Trust Corp. v. Dabney, 73 F.3d 262, 266 (10th Cir. 1995). Moreover, the Tenth Circuit has held that "production of work-product material during discovery waives a work-product objection." In re Qwest Commc'ns Int'l Inc., 450 F.3d at 1186.

## ANALYSIS

RRI objects to the EEOC's listing of Ms. Saavedra as a witness and seeks a protective order prohibiting the EEOC from taking her deposition. RRI represents that, based on information that the EEOC's counsel relayed to it during efforts to resolve this issue before filing this motion, the EEOC

does not list Ms. Saavedra as a factual witness for the purposes of determining what Bertrand said or what was heard on the radio, but seeks to depose Ms. Saavedra to inquire as to her reasoning for bringing the statement to RRI's attention and recommending action against Bertrand. While Ms. Saavedra is no longer counsel for RRI, thereby reducing or eliminating many of the fears implicit in the motion, the EEOC has not filed a written response to this motion or demonstrated how the sought testimony may be relevant.

RRI filed its motion to strike Ms. Saavedra as a witness and for a protective order on November 13, 2006. The EEOC has not filed a written response, and the time for doing so has passed. Pursuant to Local Civil Rule 7.6(a), "[a] response must be served within fourteen (14) calendar days after service of the motion." D.N.M.L.R.-Civ. 7.6(a). In addition, Local Civil Rule 7.1(b) provides that "[t]he failure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion." D.N.M.L.R.-Civ. 7.1(b).

Nevertheless, despite the EEOC's consent under the rule, because of the difficulty of establishing proof in a retaliation case and the fact that plaintiffs must often rely on circumstantial evidence, the Court has independently reviewed the contents of the motion and the circumstances of the case to determine whether it should grant RRI's motion. Because the Court believes there are adequate legal grounds upon which to grant the relief that RRI requests, and because the EEOC has not made any showing to demonstrate how the information it seeks from Ms. Saavedra is relevant to this case, the Court will grant the motion in part and deny it in part.

## I. THE EEOC HAS NOT SHOWN THAT THERE ARE NO OTHER REASONABLE MEANS TO OBTAIN THE SOUGHT INFORMATION.

As a preliminary matter, the Court notes that the three-part test that the Tenth Circuit has adopted for assessing whether a court should permit the deposition of opposing counsel may not necessarily apply now that Ms. Saavedra has withdrawn from the case. The Court believes, however, that, because Ms. Saavedra was RRI's counsel at the time she wrote the e-mail about which EEOC seeks to question her, and because her deposition testimony still implicates issues of attorney-client privilege and the attorney work-product doctrine, the three-part test will be useful in determining whether the Court should compel her deposition under the discovery rules.

RRI contends that the EEOC's inquiry "seeks to invade the realm of attorney-client privilege and is beyond the scope of the first prong" in the Tenth Circuit's three-part test. RRI's Memorandum at 4. RRI emphasizes that the EEOC does not seek factual information regarding the content of the statements Bertrand made. See id. Rather, the EEOC appears to be inquiring into the motives of RRI's attorney and seeking information regarding the basis for Ms. Saavedra's e-mail.

RRI acknowledges that, because of the e-mail's disclosure, "the facts surrounding the [e-mail] communication may no longer be privileged," but argues that the EEOC's further attempt "to get into counsel's reasoning for advising a particular client is privileged and considered attorney work-product." Id. As the party asserting the applicability of work-product protection, RRI bears the burden to prove the doctrine is applicable. See Resolution Trust Corp. v. Dabney, 73 F.3d at 266. Moreover, the Tenth Circuit has held that "production of work-product material during discovery waives a work-product objection." In re Qwest Commc'ns Int'l Inc., 450 F.3d at 1186. The question, therefore, is to what extent RRI may have waived that protection by disclosing the e-mail.

Neither party has pointed to other privileged communications about which Ms. Saavedra might talk at the deposition. Arguably, she has waived any privilege that otherwise would protect communications about the subject matter. The EEOC has not, however, argued that there are other communications, and RRI has not shown that any other communications are privileged. In sum, the record is poor regarding attorney-client privilege.

The record is similarly poor with regard to the attorney work-product doctrine. While the Court does not believe that RRI can rely on the work-product doctrine to object to the EEOC's use of the disclosed e-mail, the doctrine may protect Ms. Saavedra from having to provide deposition testimony regarding her motivation for sending the e-mail. While the Court has previously acknowledged that courts are divided on whether subject-matter waiver applies to work-product protection, see Anaya v. CBS Broadcasting, No. CIV-06-476 JB/KBM (D.N.M. 2007), Memorandum Opinion and Order at 12-13, filed April 30, 2007 (Doc. 107)(collecting cases), courts that have applied subject-matter waiver to the attorney work-product doctrine have often been careful to confine their application to non-opinion work product, see In re Echostar Commc'ns Corp., 448 F.3d 1294, 1302 (Fed. Cir. 2006)("[W]ork product waiver only extends to factual or non-opinion work product concerning the same subject matter as the disclosed work product."); United States v. Mass. Inst. of Tech., 129 F.3d 681, 688 (1st Cir. 1997)(explaining that rule 26(b)(3) may protect opinion work product from discovery, "even if protection of ordinary work product materials were deemed waived because of selective disclosure"); Cox v. Adm'r U.S. Steel & Carnegie, 17 F.3d 1386, 1422 (11th Cir. 1994)("[T]he subject-matter waiver doctrine does not extend to materials protected by the opinion work product privilege."); United States v. Pollard (In re Martin Marietta Corp.), 856 F.2d 619, 626 (4th Cir. 1988)(holding subject matter waiver does not extend to opinion

work product).

The Court believes that extending a broad subject-matter waiver applicable to the attorney-client privilege to the work-product protection would not properly reflect the purpose of the work-product protection. See Sanchez v. Matta, 229 F.R.D. 649, 654 (D.N.M. 2004)(Browning, J.)("The attorney work-product protection is based on the recognition that it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel."). The Court also believes that strategically disclosing attorney work-product is fundamental to the litigation process, and that the rule some courts have embraced applying subject-matter waiver to non-opinion work product may stifle advocacy by requiring lawyers to disclose materials that contain both opinion and non-opinion work product. While the Court could protect only opinion work product and find a subject-matter waiver for non-opinion work product, it seems that lawyers should be in control of their work product, and be allowed to strategically decide when to disclose, if ever, their work product. Accordingly, the Court concludes this approach is the most faithful to the policies underlying the attorney work-product doctrine; "[u]nlike the attorney-client privilege, which is designed to protect the client's confidences, the work product doctrine is designed to protect the adversary process." J. Moore, Moore's Federal Practice § 26.70(6)(a) (3d. ed. 2006).

In any case, the Court need not decide whether any subject-matter waiver applies to resolve this motion, because RRI has not established that any work-product protection applies to Ms. Saavedra's deposition testimony. RRI argues that the work-product privilege protects against the discovery of Ms. Saavedra's mental impressions and motivations for sending the e-mail about which the EEOC would like to question her. See RRI's Memorandum at 4-5. RRI has not, however, provided the Court with a copy of the e-mail or explained what litigation Ms. Saavedra was

anticipating when she sent the e-mail to Dunn. RRI bears the burden of proving that the work-product protection is applicable and has not addressed the issue of a potential subject-matter waiver. The Court notes that, under Tenth Circuit law, "[a] mere allegation that the work product doctrine applies is insufficient." Resolution Trust Corp. v. Dabney, 73 F.3d at 266.

While the Court believes that RRI has likely waived any protection that may have been afforded to the e-mail itself, it acknowledges that, if some evidence beyond RRI's mere allegation that work-product protection is applicable to this case were presented, to the extent that RRI's motion requests a protective order against the taking of Ms. Saavedra's deposition, RRI's position may have some merit. The Court believes that RRI can selectively disclose work product, and Ms. Saavedra's mental impressions at the time she composed the e-mail and her motivations for sending the e-mail are opinion work product to which courts have been reluctant to extend the subject-matter waiver doctrine.

Because the protections of rule 26(c) are broader than the attorney-client privilege and the attorney work-product doctrine, see Boughton v. Cotter Corp., 65 F.3d at 829-30, the Court will also consider whether the EEOC has alternate means to obtain the information it seeks through Ms. Saavedra's deposition. It is likely that only Ms. Saavedra has full information about her own mental processes. On the other hand, Dunn may have some information that would satisfy the EEOC's needs. In any case, the EEOC has not shown that it could not get some or all of the information it wants from Dunn or others. Further, if the nature of the information the EEOC seeks is factual, the Court agrees with RRI that there are alternative means to obtain the information. The information was broadcast on-air and was presumably heard by a number of people who may have been listening to the radio in the Roswell area on the day the statements were made. If the EEOC seeks information

regarding the content of the statements, the timing and circumstances under which they were made, or about the people who heard the statements and the impressions the statements made, recordings of the broadcast and witnesses other than Ms. Saavedra may provide that information.

In sum, if the three-part test applicable to depositions of opposing counsel applies, the EEOC has not made a showing of what it wants to get out of the deposition and whether there are alternate sources for the information. If, on the other hand, the three-part test does not apply, RRI has not shown that the testimony sought remains privileged or protected, and will need to find another basis for its request for a protective order.

## II.   THE EEOC HAS NOT SHOWN THAT THE INFORMATION IT SEEKS IS RELEVANT AND NONPRIVILEGED.

RRI has not asserted that there are other communications or information that could be the subject of Ms. Saavedra's deposition and which are privileged or otherwise protected. RRI concedes that the disclosure of the e-mail may have waived any attorney-client privilege associated with its content, and the Court has also already concluded that RRI has not made a showing sufficient to demonstrate that the attorney work-product protection applies to Ms. Saavedra's testimony. Consequently, RRI needs another basis for the protective order it seeks.

The more difficult problem for the EEOC may be establishing the relevance of the testimony it seeks from Ms. Saavedra. Even if the Tenth Circuit's three-prong test related to taking the deposition of opposing counsel does not apply, under the discovery rules, the information sought still needs to be arguably relevant. See Fed. R. Civ. P. 26(b)(1). The EEOC's allegations are that RRI retaliated against Bertrand for her deposition testimony in a prior EEOC proceeding. See Complaint ¶ 8, at 2. The EEOC alleges that, after Bertrand gave a deposition on February 17, 2005, RRI

subjected her to disparate treatment and ultimately terminated her. See id. ¶¶ 8-9, at 2-3. The e-mail communication between Ms. Saavedra and Dunn, however, occurred on July 27, 2004 -- almost seven months before the deposition.

RRI contends that there is no factual relationship between the two incidents. See RRI's Memorandum at 5. RRI maintains that the information sought is not relevant to the EEOC's case on behalf of Bertrand. See id. While the Court has considered how the evidence could possibly be relevant, without argument by the EEOC, any conclusion the Court might reach on its relevance would be speculation. Moreover, the EEOC has filed its own motion requesting the Court exclude all evidence related to the e-mail based, in part, on the e-mail's lack of relevance. Consistent with the general reluctance to allow the deposition of an opposing party's attorney, the Court will not make a finding of relevance.

## III. THE EEOC HAS NOT SHOWN THAT THE INFORMATION IS CRUCIAL TO THE PREPARATION OF ITS CASE.

Given that the Court has concerns about the relevance of the testimony the EEOC seeks, the EEOC has difficulty demonstrating that Ms. Saavedra's testimony is crucial for its case. Moreover, the EEOC has not responded to this motion and has made no effort to show that the deposition is crucial.

RRI suggests that the EEOC is tactically attempting to call Ms. Saavedra as a witness to force her to withdraw as co-counsel for RRI. See id. at 6. RRI contends that, by deposing Ms. Saavedra, the EEOC would place her in a position that would compromise her loyalty and ethical duty to her client, because Ms. Saavedra's knowledge extends beyond factual matters. See id.

The Court need not decide whether the EEOC's attempt to depose Ms. Saavedra is a genuine

attempt to secure needed information, or a tactical attempt to force her and her law firm out of the case. At this stage of the case, that issue is somewhat moot, because she has withdrawn from the case. It is sufficient to find that the EEOC has not shown that the information is crucial to the preparation of its case, has not satisfied the three-part test applicable to taking the deposition of opposing counsel, and has not demonstrated how the information it seeks from Ms. Saavedra's testimony is relevant to Bertrand's case.

## IV. THE COURT WILL NOT STRIKE MS. SAAVEDRA'S NAME FROM THE WITNESS LIST AND WILL NOT AWARD RRI FEES AND COSTS.

The withdrawal of RRI's counsel, the failure of the EEOC to respond to the written motion, and the lack of any current counsel for RRI has complicated this motion. The Court has had to surmise the EEOC's position largely from a separate motion it filed. While RRI had to expend fees in preparing a motion that is essentially unopposed, the EEOC, if it had responded and opposed the motion, might have been able to make the necessary showing to successfully defend against RRI's motion. It appears that this is one of those situations where the EEOC had good grounds to place Ms. Saavedra on its witness list, to seek her deposition, and to oppose RRI's motion, but subsequently decided that it did not want the evidence introduced at all. Given the poor record before the Court on this issue, and the current state of RRI's representation, the Court will not award fees and costs to RRI.

The Court will also not strike Ms. Saavedra from the EEOC's witness list. The EEOC has represented that it will remove Ms. Saavedra from its witness list, so the motion to strike is moot. Moreover, a motion to strike is limited to challenges of pleadings, and is not appropriate to question names on witness lists. See Searcy v. Soc. Sec. Admin., No. 91-4181, 1992 U.S. App. LEXIS 3805,

at *5 (10th Cir. March 2, 1992)("[T]here is no provision in the Federal Rules of Civil Procedure for motions to strike motions and memoranda."); J. Moore, Moore's Federal Practice § 12.37[2] (3d ed. 2005)("Only material included in a 'pleading' may be the subject of a motion to strike, and courts have been unwilling to construe the term broadly. Motions, briefs, or memoranda, objections, or affidavits may not be attacked by the motion to strike.").

**IT IS ORDERED** that the Defendant's Motion to Strike Counsel for Defendant as a Witness and Motion for Protective Order is granted in part and denied in part. The Court will not strike Ms. Saavedra as a potential witness, but it will issue a protective order restricting the EEOC from taking her deposition. The Court will deny the Defendant's request for attorneys' fees and costs associated with bringing this motion.

UNITED STATES DISTRICT JUDGE

*Parties and Counsel:*

Mary Jo O'Neill
Regional Attorney
Sally Shanley
Acting Supervisory Trial Attorney
Equal Employment Opportunity Commission
Phoenix, Arizona

-- and –

Loretta F. Medina
  Senior Trial Attorney
Veronica A. Molina
  Trial Attorney
Equal Employment Opportunity
  Commission
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Roswell Radio, Incorporated
Roswell, New Mexico

    *Defendant Pro Se*

A.J. Olsen
Sheryl L. Saavedra
Hennighausen & Olsen, L.L.P.
Roswell, New Mexico

    *Former Attorneys for the Defendant*